IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-20967
_____


In The Matter Of:   GEORGE R HINSLEY,

Debtor.

-------------------------------------

PATRICIA JO HINSLEY; GEORGE R HINSLEY,

Appellants,

v.

MIKE BOUDLOCHE,

Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
(CA-H-95-5713)
_____
July 15, 1998

Before KING, BARKSDALE, and PARKER, Circuit Judges.

KING, Circuit Judge:[*]

Appellants George R. Hinsley and Patricia Jo Hinsley seek

reversal of certain orders entered by the district court in

George R. Hinsley's bankruptcy proceeding.  Specifically, Mr.

Hinsley challenges an order denying his discharge in bankruptcy

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

that was entered without a hearing. Mrs. Hinsley challenges an order of the district court authorizing the attachment of certain property that she claims is her separate property and therefore not part of Mr. Hinsley's bankruptcy estate. Mr. and Mrs. Hinsley both challenge an order entered in an adversary proceeding initiated by the bankruptcy trustee setting aside certain transfers of property from Mr. Hinsley to Mrs. Hinsley. For the reasons that follow, we affirm in part, vacate in part, and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 31, 1985, Western Bank Westheimer (Western) loaned the 6200 Kansas Street Partnership (the Partnership), a general partnership in which George Hinsley (Mr. Hinsley) was a partner, funds to purchase real estate. The Partnership's indebtedness to Western was evidenced by a $3.8 million promissory note executed by the Partnership. In October 1987, Western failed, and the Federal Deposit Insurance Corporation (FDIC), as the bank's receiver, succeeded to its rights in the note. The FDIC claims that, as of August 1988, the note was in default. Mr. Hinsley claims that the note was not in default until the third quarter of 1989.

Between January 20 and July 7, 1989, Mr. Hinsley and Patricia Jo Hinsley (Mrs. Hinsley), his wife, entered into a series of partition agreements and ancillary assignments

2

(collectively, the Partition Agreements) purporting to transform all of the couple's passive, income-producing community property into Mrs. Hinsley's separate property. The Hinsleys claim that they promptly and properly recorded all of the transfers effected by the Partition Agreements in the appropriate property records. In August 1991, the FDIC brought suit against Mr. Hinsley in federal district court to collect on the promissory note that Mr. Hinsley had executed on behalf of the Partnership, and, in May 1992, the district court rendered summary judgment in favor of the FDIC. The district court entered final judgment in favor of the FDIC for approximately $4.8 million.

In an attempt to collect on the judgment, the FDIC applied to the district court for post-judgment turnover relief pursuant to § 31.002 of the Texas Civil Practice and Remedies Code, requesting that the court assign certain specific assets to it. In May 1994, the district court entered an order granting turnover relief and requiring Mr. Hinsley to provide an accounting to the FDIC of assets owned by him that were subject to levy and execution in satisfaction of the FDIC's judgment against him. In August 1994, the FDIC moved for sanctions, alleging that Mr. Hinsley had failed to comply with the district court's May 1994 turnover order. During a hearing on the motion on September 25, 1995, Mr. Hinsley testified about the Partition Agreements. He stated that the agreements were the product of marital difficulties and that he and his wife entered into the

3

agreements as part of an effort at marital reconciliation. Additionally, he testified that, through the Partition Agreements, he took the assets that required management, and his wife took the liquid assets. Mr. Hinsley also stated that Mrs. Hinsley had annual income of approximately $200,000 from the assets that the Partition Agreements transferred to her. The district court noted that, as a result of the Partition Agreements, "it appears as though she got all the debt-free property, income-producing type, which is personal and/or realty; and you took all the debt and debts associated with the other property which might have been income producing."

In July 1995, the FDIC moved for injunctive relief barring Mr. Hinsley from transferring his assets without leave of the district court and for turnover relief. The district court held an evidentiary hearing on these motions on July 25, 1995. On July 27, 1995, the district court entered an order granting turnover and injunctive relief to the FDIC (the Pre-Petition Turnover Order). The order provided as follows:

> [T]he assets held and/or controlled by George Hinsley, his wife, agents or assigns are hereby frozen and placed under the control of this Court. The defendant, his wife, agents or assigns is hereby enjoined from selling, withdrawing and/or transferring any assets under their control save and except necessary household expenses until further order of this Court, unless done so with Court permission.

Further, it ordered Mr. and Mrs. Hinsley to "prepare, execute, and file papers in this Court in form and content acceptable to

4

the FDIC, assigning to the FDIC all of the defendant's, his wife's, agents' or assigns' right, title and interest" in the following property, with the exception of $60,000 of exempt personal property:

> a promissory note payable to George Hinsley; household goods with a reported value of $240,000; jewelry and furs listed on [an insurance policy listing George Hinsley as the beneficiary;] stocks, bonds, debentures, financial instruments to which George Hinsley, his wife, agents or assigns has an interest (ownership), partially or totally, promissory notes payable to George Hinsley, his wife, agents or assigns, life insurance policies in the name of George Hinsley and/or wherein George Hinsley is the beneficiary.

The Pre-Petition Turnover Order also contained the court's conclusion that the Partition Agreements between Mr. and Mrs. Hinsley protected none of these assets from attachment because "the community debt obligations transcend any attempt to shelter or protect previously acknowledged community property." Finally, it ordered Mr. Hinsley not to "file or join with other persons or entities in the filing of any cause of action in [federal district court] or in the state court seeking relief against the FDIC or any other party where such action arises out of the judgment issued in [the district court] or the property upon which turnover relief has been granted."

On August 10, 1995, Mr. Hinsley filed his notice of appeal from the Pre-Petition Turnover Order. On October 10, 1995, the FDIC filed a motion to add Mrs. Hinsley as a party to the suit, and the district court granted this motion on December 13, 1995.

On March 12, 1996, Mrs. Hinsley filed an answer requesting either (1) that she be dismissed as a party to the suit, or (2) a declaration that the property to which the Partition Agreements with Mr. Hinsley purported to vest her with title was not available to satisfy the FDIC's judgment against Mr. Hinsley. No further action has taken place in that case, except that this court dismissed Mr. Hinsley's appeal on August 6, 1996.[1]

On August 10, 1995, the same date that he filed his notice of appeal in the FDIC action, Mr. Hinsley filed a petition for Chapter 11 bankruptcy relief in bankruptcy court in the Corpus Christi division of the Southern District of Texas. Mrs. Hinsley did not join in Mr. Hinsley's bankruptcy petition. On August 16, 1995, Mrs. Hinsley filed an adversary complaint in Mr. Hinsley's bankruptcy case seeking a declaratory judgment that the Partition Agreements were valid and that the property which they purported to convey to her was her separate property and not the property of the bankruptcy estate. Mr. Hinsley answered on September 18, 1995, admitting all of the factual allegations in Mrs. Hinsley's complaint.[2] On November 14, 1995 the bankruptcy court entered an

---

[1] As indicated infra, Mr. Hinsley filed for bankruptcy the same day that he filed his notice of appeal. His Chapter 7 bankruptcy trustee, as Mr. Hinsley's successor in interest, filed a motion to dismiss the appeal, which this court granted.

[2] On March 4, 1996, the trustee filed a motion to substitute himself for Mr. Hinsley as a representative party in Mrs. Hinsley's adversary proceeding, and the bankruptcy court entered an order granting this motion on April 9, 1996. On September 26, 1996, the trustee filed a motion seeking leave to

order converting Mr. Hinsley's bankruptcy from Chapter 11 to Chapter 7.  The same day, the bankruptcy court appointed Michael Boudloche (the Trustee) as trustee of Mr. Hinsley's bankruptcy estate.  On December 19, 1995, the district court entered an order withdrawing the reference of Mr. Hinsley's bankruptcy case to the bankruptcy court and ordering administration of the bankruptcy case in the district court.  The district court subsequently consolidated all of the litigation involving Mr. Hinsley, including the bankruptcy, all adversary proceedings, and the FDIC action.

On September 11, 1996, the Trustee filed a "Motion for Turnover of Assets," whereby the Trustee requested that the district court order Mr. Hinsley to turn over to the Trustee the assets that the district court had ordered frozen in the Pre-Petition Turnover Order.  On October 25, 1996, the district court entered an order (the Bankruptcy Turnover Order) ordering Mr. Hinsley to "turnover physical possession of" these assets to the Trustee within fifteen days.

On December 23, 1996, the Trustee filed a "Notice of Civil and Criminal Contempt" based upon Mr. and Mrs. Hinsley's alleged noncompliance with the Pre-Petition Turnover Order and the Bankruptcy Turnover Order.  On February 4, 1997, the district court held a contempt hearing at which both Mr. and Mrs. Hinsley

file an amended answer.  Mrs. Hinsley took no further action in the adversary proceeding, and it was closed on October 24, 1996.

invoked their Fifth Amendment privilege against self-incrimination.[3]  On November 26, 1997, the district court entered an order holding Mr. Hinsley in civil contempt and ordering him incarcerated commencing December 8, 1997, until he complied with the Pre-Petition Turnover Order and the Bankruptcy Turnover Order.  Mr. Hinsley subsequently executed quitclaim deeds to certain real property to the Trustee, and the district court entered an order on December 10, 1997 declaring that Mr. Hinsley was in compliance with the Pre-Petition and Bankruptcy Turnover Orders and ordering his release from custody.  Mr. Hinsley timely appealed the Bankruptcy Turnover Order, and this court affirmed the order on September 3, 1997.  See Hinsley v. Boudloche (In re Hinsley), No. 96-21103 (Sept. 3, 1997) (unpublished).

On August 8, 1997, the Trustee filed his "Complaint for Declaratory Judgment, To Avoid Transfers and for Turnover and Accounting of Property of the Estate and for Injunctive Relief," in which the Trustee sought, among other things, a declaration that the Partition Agreements between Mr. and Mrs. Hinsley were void.  Apparently treating the Trustee's complaint as a motion, on November 26, 1997, the district court entered an order granting "[t]he Trustee's motion to avoid transfers in this

_____

[3]  Mr. Hinsley subsequently filed a motion to withdraw his invocation of the privilege.

8

cause, to the extent not previously resolved by other Orders" (the Transfers Order).[4]

On January 13, 1997, the Trustee filed a "Complaint Objecting to Discharge." Without conducting any sort of hearing on the complaint, the district court entered an order (the Discharge Order) sustaining the Trustee's objection to discharge on November 26, 1997.[5]

On April 21, 1997, the Trustee filed a "Motion to Show[]Cause Why Writs Should Not Issue" in which he requested that the district court hold a hearing at which Mr. and Mrs. Hinsley would be required to show cause why writs of attachment and assistance should not issue as to all of the assets covered by the Pre-Petition and Bankruptcy Turnover Orders pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and Rule 70 of the Federal Rules of Civil Procedure. On November 26, 1997, the district court entered an order granting the motion as well as an

---

[4] A review of the record reveals no "motion" by the Trustee to avoid transfers.

[5] The order states the following:

> The Trustee's objections to the discharge of the debtor, George R. Hinsley, brought pursuant to 11 U.S.C. § 727(c)(1) is [sic] Sustained.
> It is Ordered that the debtors shall not be Discharged from any debts pending the resolution of all proceedings.

While the second sentence of the order creates some ambiguity as to the district court's purpose in entering this order, we conclude, as the parties do, that the order constitutes a final denial of Mr. Hinsley's discharge.

9

"Order and Judgment Issued Pursuant to 28 U.S.C. § 1651(a) and FRCP 70" (the All Writs Order and Judgment). The All Writs Order and Judgment "empowered, directed and authorized" the U.S. marshal "to attach all of the personal property covered by (i) the Partition Agreements between George and Patricia Hinsley and (ii) the assets []which are identified either in [the Pre-Petition Turnover Order], or in pleadings or evidence in the FDIC Suit that support such Turnover Order, and (iii) all other assets frozen by [the Pre-Petition Turnover Order]." It also "empowered, directed and authorized" the U.S. marshal to take possession of certain real property that Mrs. Hinsley claims is her homestead.

## II. DISCUSSION

Both Mr. and Mrs. Hinsley challenge the Transfers Order. Additionally, Mrs. Hinsley challenges the All Writs Order and Judgment, and Mr. Hinsley challenges the Discharge Order. We address the viability of each of these orders in turn.

### A. The Transfers Order

Mr. and Mrs. Hinsley each challenges the validity of the Transfers Order. As noted earlier, in entering the Transfers Order, the district court apparently treated the Trustee's "Complaint for Declaratory Judgment, To Avoid Transfers and for Turnover and Accounting of Property of the Estate and for Injunctive Relief" as a motion. However, the Trustee's complaint

10

initiated an adversary proceeding, which in essence is an independent law suit in a bankruptcy case.  See In re Tribble, 205 B.R. 405, 406 n.1 (Bankr. E.D. Ark. 1997); 1 DANIEL R. COWANS, BANKRUPTCY LAW AND PRACTICE § 3.19(a), at 308 (6th ed. 1994) ("Adversary proceedings are contemplated to be a separate piece of litigation under the overall bankruptcy case, i.e. in the nature of an independent action.").  Mr. and Mrs. Hinsley each filed an answer in the adversary proceeding, but none of the parties filed any dispositive motions.  As such, the Transfers Order amounted to a sua sponte grant of summary judgment in favor of the Trustee.[6]

While a district court may in some circumstances enter summary judgment sua sponte, it must comply with certain procedural requirements in doing so.

---

[6]  The Transfers Order states that "[t]he Trustee's motion to avoid transfers in this cause, to the extent not previously resolved by other Orders, is Granted."  It is not entirely clear what relief the district court intended to afford the Trustee through this order.  The Trustee's complaint alleged a number of causes of action and claims for relief, including fraud, constructive trust, declaratory judgment, fraudulent transfer, conspiracy, and injunctive relief.  However, the Trustee concedes on appeal that, "[t]o the extent that the order exceeds the relief already granted through the turnover orders, it can be modified to eliminate that excessive relief and affirmed."  We therefore construe the Transfers Order as a judgment declaring the invalidity of the Partition Agreements and ordering the turnover of the assets that they purportedly conveyed to Mrs. Hinsley to the Trustee.

11

> Under Fed. R. Civ. P. 56(c),[7] a party must be served
> with a motion for summary judgment at least 10 days
> before a court grants the motion against him.
> Similarly, a party must be given at least 10 days
> notice before a court grants summary judgment <u>sua
> sponte</u>.  This requirement places a party on notice that
> he is in jeopardy of having his case dismissed and
> affords him the opportunity to put forth evidence to
> show precisely how he intends to prove his case at
> trial.

<u>Millar v. Houghton</u>, 115 F.3d 348, 350 (5th Cir. 1997) (footnotes omitted).  "Despite the strictness of this rule, our Court has recognized that the district court's failure to provide notice may be harmless error."  <u>Ross v. University of Tex. at San Antonio</u>, 139 F.3d 521, 527 (5th Cir. 1998); <u>see</u> <u>also</u> <u>Nowlin v. Resolution Trust Corp.</u>, 33 F.3d 498, 504 (5th Cir. 1994).  This is the case when the "nonmovant has no additional evidence or if all of the nonmovant's additional evidence is reviewed by the appellate court and none of the evidence presents a genuine issue of material fact."  <u>Id.</u> (internal quotation marks and emphasis omitted).

As to Mr. Hinsley, we conclude that the Transfers Order is valid because the Pre-Petition Turnover Order, with its attendant legal determination that the Partition Agreements were invalid as to creditors, and the Bankruptcy Turnover Order are res judicata as to him.  Application of the doctrine of res judicata is appropriate if the following four criteria are satisfied:  "(1)

---

[7] Bankruptcy Rule 7056 renders Rule 56 of the Federal Rules of Civil Procedure applicable to adversary proceedings. <u>See</u> FED. R. BANKR. P. 7056.

12

the parties must be identical in the two actions; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same cause of action must be involved in both cases." Eubanks v. FDIC, 977 F.2d 166, 169 (5th Cir. 1992); see also Howe v. Vaughan (In re Howe), 913 F.2d 1138, 1143-44 (5th Cir. 1990). No question exists as to the satisfaction of the first two elements, and both the Pre-Petition and Bankruptcy Turnover Orders constitute final judgments.  See Maggio v. Zeitz, 333 U.S. 56, 68 (1948) (observing that a bankruptcy turnover order is "res judicata and not subject to collateral attack"); Smith v. Revie (In re Moody), 817 F.2d 365, 368 (5th Cir. 1987) (holding that a turnover order entered by the bankruptcy court in an adversary proceeding is a final order); In re Marriage of Long, 946 S.W.2d 97, 98 (Tex. App.--Texarkana 1997, n.w.h.) ("A turnover order is a final, appealable judgment."); Thomas v. Thomas, 917 S.W.2d 425, 436 (Tex. App.--Waco 1996, no writ) ("The post-judgment turnover order is an appealable final judgment.").  As noted earlier, the Transfers Order constituted an adjudication of precisely the same issues raised in the Pre-Petition and Bankruptcy Turnover Orders and did nothing more than grant the same relief already granted by these orders.  See supra note 6. It is therefore clear from the record that Mr. Hinsley cannot demonstrate the existence of a genuine issue of material fact regarding the validity of the Partition Agreements.  As such, the

13

district court's failure to provide Mr. Hinsley with notice of its intent to summarily dispose of the Trustee's complaint seeking avoidance of the transfers effected by the Partition Agreements was harmless error.

However, the same cannot be said of the district court's failure to provide Mrs. Hinsley with such notice.  For the reasons set forth below, we conclude that neither the Pre-Petition Turnover Order nor the Bankruptcy Turnover Order has any binding effect on Mrs. Hinsley.  We further conclude that the record before us does not otherwise demonstrate the Trustee's entitlement to judgment as a matter of law regarding the validity of the Partition Agreements.

### 1.  The Pre-Petition Turnover Order

Mrs. Hinsley contends that the Pre-Petition Turnover Order could not have adjudicated her rights in the property that the Partition Agreements purported to convey to her because she was not a party to the FDIC action at the time that the district court entered the order.  We agree.

In Martin v. Wilks, 490 U.S. 755 (1989), the Supreme Court observed,

> "[i]t is a principle of general application in
> Anglo-American jurisprudence that one is not bound by a
> judgment in personam in a litigation in which he is not
> designated as a party or to which he has not been made
> a party by service of process."  Hansberry v. Lee, 311
> U.S. 32, 40 (1940). See, e.g., Parklane Hosiery Co. v.
> Shore, 439 U.S. 322, 327, n.7 (1979); Blonder-Tongue
> Laboratories, Inc. v. University Foundation, 402 U.S.

14

> 313, 328-329 (1971); <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 395 U.S. 100, 110 (1969). This rule is part of our "deep-rooted historic tradition that everyone should have his own day in court." 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4449, p. 417 (1981) . . . . A judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings.

<u>Id.</u> at 761-62 (brackets in original). When the district court entered the Pre-Petition Turnover Order, Mrs. Hinsley was not a party to the FDIC action. We therefore conclude that the fundamental legal tenets discussed in <u>Wilks</u> dictate that the Pre-Petition Turnover Order could have no binding effect on her. We find the arguments to the contrary advanced by the Trustee and the FDIC as amicus curiae unpersuasive.

The Trustee first contends that the Pre-Petition Turnover Order was enforceable against Mrs. Hinsley pursuant to Rule 71 of the Federal Rules of Civil Procedure. Rule 71 provides in relevant part that, "when obedience to an order may be lawfully enforced against a person who is not a party, that person is liable to the same process for enforcing obedience to the order as if a party." Fed. R. Civ. Proc. 71.

"Rule 71 does not undertake to say when an order can be made in favor of or against a person not a party. It merely provides that when this can be done nonparties have recourse to, and are subject to, process in the same measure as parties." 12 Charles Alan Wright et al., Federal Practice and Procedure § 3031, at 173 (2d ed. 1997). Thus, the Trustee's reliance on Rule 71 merely begs the

15

question of whether the Pre-Petition Turnover Order is an order of a type that may be lawfully enforced against a nonparty, and the Trustee has not demonstrated that it is.

The Trustee next contends that the district court's subsequent entry of an order joining Mrs. Hinsley as a party to the FDIC action rendered the Pre-Petition Turnover Order effective as to her because Mrs. Hinsley could have appealed the Pre-Petition Turnover Order or filed a motion for reconsideration of that order in the district court. He has cited no authority in support of this proposition, and we conclude that it is simply untenable. Mrs. Hinsley was not a party to the Pre-Petition Turnover Order because she was not a party to the action when the district court entered the order. The district court's addition of Mrs. Hinsley as a party months after its entry of the Pre-Petition Turnover Order cannot operate to retroactively render her a party to that order based simply on the fact that she might have been able to file a motion for relief from judgment with respect to that order pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.

Moreover, assuming arguendo that Mrs. Hinsley could have under any circumstances appealed the Pre-Petition Turnover Order given her status as a nonparty at the time of the order's entry, any such appeal would have been time-barred. Rule 4(a) of the Federal Rules of Appellate Procedure provides that a party generally must file a notice of appeal within sixty days of entry

16

of the judgment or order from which the appeal is taken in a case in which the United States or an officer or agency thereof is a party or within fourteen days of a notice of appeal filed by another party, whichever is later.  See FED. R. APP. PROC. 4(a)(1), (3).  When a party fails to file a notice of appeal within the allotted time period, the rule allows the district court to grant a request for an extension by the party "upon a showing of excusable neglect or good cause."  Id. 4(a)(5).

> The party must file that request not later than thirty days after the initial period allowed for filing notice of appeal expires.  A district court which grants such a request may not expand the period for filing notice of appeal beyond the later of thirty days after expiration of the original filing period or ten days after entry of the order granting the request.

Allied Steel, General Contractor v. City of Abilene, 909 F.2d 139, 142 (5th Cir. 1990); see also FED. R. APP. PROC. 4(a)(5).  The district court did not enter its order adding Mrs. Hinsley as a party to the lawsuit until December 13, 1995, and Mrs. Hinsley was not served until February 22, 1996, nearly seven months after the district court entered the Pre-Petition Turnover Order.  By the time Mrs. Hinsley could have filed a notice of appeal (assuming once again that she could have filed one at all), the time period during which Rule 4 would have allowed her to file a notice of appeal or a request that the district court extend the time limit for doing so had long passed.[8]

---

[8] The Trustee contends, without supporting analysis or authority, that the timetable for Mrs. Hinsley to file a notice

17

The Trustee also makes much of the fact that Mrs. Hinsley had knowledge of the Pre-Petition Turnover Order and could have intervened earlier in the FDIC action to protect her interests. However, it has been long established that "[t]he law does not impose upon any person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger. . . . Unless duly summoned to appear in a legal proceeding, a person not a privy may rest assured that a judgment recovered therein will not affect his rights." Chase Nat'l Bank v. Norwalk, 291 U.S. 431, 441 (1934); see also Martin, 490 U.S. at 765 ("Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree."). Therefore, Mrs. Hinsley's failure to intervene in the FDIC action provides no basis for concluding that the Pre-Petition Turnover Order adjudicated her interest in the property purportedly transferred to her by the Partition Agreements.

The FDIC, as amicus curiae, contends that, even if the Pre-Petition Turnover Order is not binding upon Mrs. Hinsley by virtue of her joinder as a party to the FDIC action after entry of the order or her knowledge of the proceedings in the action,

_____

of appeal did not begin to run until she appeared and answered. However, we find no support in the plain language of Rule 4 or in our precedent for this conclusion.

18

the order is nonetheless binding on her because she was in privity with Mr. Hinsley.  We disagree.

While the parties cite a great deal of Texas law regarding privity in advancing their respective positions, we note that it has been long established in this circuit that federal law governs the preclusive scope of a prior federal judgment, regardless of whether that judgment rests upon an issue governed by state law.  See RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1290 (5th Cir. 1995) ("Although the [federal] court's judgment in [a prior] case [is] based on state law, federal law determines the judgment's preclusive effect."); Terrell v. DeConna, 877 F.2d 1267, 1270 (5th Cir. 1989) ("[W]hen a federal court renders a decision in a diversity case, the decision's preclusive effect is measured by federal principles of preclusion."); Avondale Shipyards, Inc. v. Insured Lloyd's, 786 F.2d 1265, 1269 n.4 (5th Cir. 1986) ("We apply federal law to the question of the res judicata or collateral estoppel effect of prior federal court proceedings, regardless of the basis of federal jurisdiction in either the prior or the present action."); Johnson v. United States, 576 F.2d 606, 612-13 (5th Cir. 1978) (holding that federal rules of res judicata and collateral estoppel determined the preclusive effect of prior FTCA judgments, even though liability was based on state law).  This includes the determination of whether the judgment may bind a nonparty to the original action.  See Aerojet-General Corp. v. Askew, 511 F.2d

19

710, 717 (5th Cir. 1975) ("We see no persuasive reason to look to state law for some elements of res judicata, such as the scope of the cause of action or similarity of the parties, in light of the prominent influence of federal law on other elements of the doctrine.  To do so would sacrifice the uniformity of the law which federal courts must apply."); see also Terrell, 877 F.2d at 1271-72 (noting that the court was bound by Aerojet to conclude that federal law controlled the determination of whether a nonparty to a prior federal judgment in which jurisdiction was predicated upon diversity was bound by that judgment in a subsequent federal suit); Freeman v. Lester Coggins Trucking, Inc., 771 F.2d 860, 862-63 (5th Cir. 1985) (applying federal law in determining whether individuals who were not parties to a prior judgment in a federal diversity action were bound by the judgment in that case in a later federal suit).

We have observed that "'the term privity in itself does not state a reason for either including or excluding a person from the binding effect of a prior judgment, but rather it represents a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion.'"  Southwest Airlines Co. v. Texas Int'l Airlines, Inc., 546 F.2d 84, 95 (5th Cir. 1977) (quoting Allan D. Vestal, Preclusion/Res Judicata Variables:  Parties, 50 Iowa L. Rev. 27, 45 (1964)); see also Meza v. General Battery Corp., 908 F.2d 1262, 1266 (5th Cir. 1990).

20

For purposes of determining the preclusive effect of a prior judgment,

> this court has held that privity exists in just three, narrowly-defined circumstances: (1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit.

Id.; see also Howell Hydrocarbons, Inc. v. Adams, 897 F.2d 183, 188 (5th Cir. 1990); Southwest Airlines, 546 F.2d at 95.

Clearly, Mrs. Hinsley is not a successor in interest to Mr. Hinsley regarding any interest asserted in the FDIC action. Additionally, the record provides no indication that Mrs. Hinsley in any way controlled the litigation in the FDIC action. In order for a prior judgment to bind a nonparty on the basis that she controlled the prior litigation,

> "it is not enough the nonparty supplied an attorney or is represented by the same law firm; helped to finance the litigation; appeared as an amicus curiae; testified as a witness; participated in consolidated pretrial proceedings; undertook some limited presentations to the court; or otherwise participated in a limited way. Even a nonparty who was 'heavily involved' may remain free from preclusion."

Benson and Ford, Inc. v. Wanda Petroleum Co., 833 F.2d 1172, 1174 (5th Cir. 1987) (quoting 18 WRIGHT ET AL., supra, § 4451, at 430-31 (1981)). Mrs. Hinsley is thus bound by the Pre-Petition Turnover Order only if Mr. Hinsley adequately represented her interests in the FDIC action.

> [T]he concept of "adequate representation" does not refer to apparently competent litigation of an issue in

21

> a prior suit by a party holding parallel interests;
> rather, it refers to the concept of virtual
> representation, by which a nonparty may be bound
> because the party to the first suit is so closely
> aligned with his . . . interests as to be his virtual
> representative.

Freeman, 771 F.2d at 864 (internal quotation marks, footnote, and citations omitted); see also Eubanks v. FDIC, 977 F.2d 166, 170 (5th Cir. 1992).  "Virtual representation does not exist between two [parties] merely because they raise similar claims and employ the same counsel.  Nor will these two elements in combination with a familial relationship between the [parties] suffice to establish virtual representation for issue preclusion purposes."  Terrell, 877 F.2d at 1271.  We have on several occasions held that "[v]irtual representation demands the existence of an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues."  Pollard v. Cockrell, 578 F.2d 1002, 1008 (5th Cir. 1978); see also Royal Ins. Co. of Am. v. Quinn-L Capital Corp., 960 F.2d 1286, 1297 (5th Cir. 1992); Meza, 908 F.2d at 1272; Talbott Big Foot, Inc. v. Boudreaux (In re Talbott Big Foot, Inc.), 887 F.2d 611, 614 n.4 (5th Cir. 1989); Benson and Ford, 833 F.2d at 1175; Hardy v. Johns-Manville Sales Corp., 681 F.2d 334, 340 (5th Cir. 1982).

The parties have pointed to no evidence in this record manifesting the existence of an express or implied legal relationship between Mr. and Mrs. Hinsley obligating Mr. Hinsley

22

to represent Mrs. Hinsley's interests in the FDIC action regarding the property purportedly conveyed to Mrs. Hinsley through the Partition Agreements. Moreover, we note that it is not even clear that an identity of interests regarding this property otherwise existed between Mr. and Mrs. Hinsley. At a minimum, Mr. Hinsley did not possess as strong an incentive to have the property at issue adjudicated as Mrs. Hinsley's separate property as Mrs. Hinsley would have. Were the property adjudicated Mrs. Hinsley's separate property, it would be subject to her "sole management, control, and disposition." TEX. FAM. CODE ANN. § 3.101 (Vernon Pamphlet 1998). While it is undoubtedly true based on the positions taken by Mr. Hinsley below that he would prefer to have the property conveyed to Mrs. Hinsley by the Partition Agreements declared her separate property, it does not follow that Mr. Hinsley's interest in such an adjudication is as strong as Mrs. Hinsley's. Moreover, Mr. Hinsley's interests to some degree conflict with Mrs. Hinsley's because, ceteris paribus, Mr. Hinsley is better off having his judgment to the FDIC paid off rather than having it linger. Payment of the judgment out of the property conveyed to Mrs. Hinsley through the Partition Agreements is not possible if it is adjudicated her separate property. We therefore conclude that Mr. Hinsley was not "so closely aligned with [Mrs. Hinsley's interests in the property conveyed to her by the Partition Agreements in the FDIC action] as to be [her] virtual representative." Aerojet, 511

23

F.2d at 719; cf. Eubanks, 977 F.2d at 170 (concluding that the disposition of a husband's claim was res judicata as to his wife regarding claims held by her that were purely derivative of her husband's claim); Terrell, 877 F.2d at 1272 (allowing a "twice-sued defendant to raise issue preclusive defenses in [a] subsequent suit by a spouse raising derivative claims").[9]

---

[9] The Terrell panel, while acknowledging that it was bound by Aerojet's holding that federal law dictates whether a federal court judgment resolving state law issues will bind a nonparty to the original action, observed that "[s]ome commentators have suggested that application of the Aerojet rule may have to be tempered by a sensitivity to substantive policy concerns underlying the distinctions in state claim preclusion doctrine." Terrell, 877 F.2d at 1272; see also Lowell Staats Mining Co. v. Philadelphia Elec. Co., 878 F.2d 1271, 1274 (10th Cir. 1989) ("As a general rule we apply federal law to the res judicata issue in successive diversity actions, but federal law will incorporate state law when the issue is more distinctly substantive, as with the concept of 'privity.'"); Brooks v. Arlington Hosp. Ass'n, 850 F.2d 191, 195 (4th Cir. 1988) ("A federal court should apply the federal doctrine of res judicata unless the application of res judicata touches an important question of state law, such as privity."); 18 WRIGHT ET AL., supra § 4472, at 737 (noting that the rule announced in Aerojet "ignores the compelling reasons that may exist for looking to state law on such questions as the scope of the cause of action or the parties bound").

While we recognize the importance of these concerns, we likewise recognize our obligation to adhere to Aerojet as the law of the circuit. However, we note that the same conclusion regarding privity would obtain under Texas law. As noted earlier, under Texas law, "[e]ach spouse has the sole management, control, and disposition of that spouse's separate property." TEX. FAM. CODE ANN. § 3.101 (Vernon Pamphlet 1998). Pursuant to this statute, a husband cannot bind his wife regarding the disposition of her separate property absent her consent. See Reed Tool Co. v. Copelin, 610 S.W.2d 736, 740 (Tex. 1980) (holding that, because a wife's claim for impairment of consortium constituted her separate property, her husband's acceptance of workers' compensation benefits could not bar her later suit for intentional impairment of consortium); Whittlesey

24

The FDIC also argues that the Pre-Petition Turnover Order constitutes law of the case as to Mrs. Hinsley because this court determined in disposing of Mr. Hinsley's appeal from the Bankruptcy Turnover Order that the Pre-Petition Turnover Order was "final and executory." It contends that this court's opinion disposing of the prior appeal in this case renders the proposition that the Partition Agreements were ineffective to change the community-property character of the assets they purported to convey to Mrs. Hinsley the law of the case. The FDIC thus argues that "it is irrelevant to this Court's analysis . . . whether Mrs. Hinsley is correct in her assertion that the district court's determination in the [Pre-Petition Turnover Order] was in error."

To the extent that the Pre-Petition Turnover Order is final and executory, the law of the case doctrine has no application. Law of the case "rules do not involve preclusion by final judgment; instead, they regulate judicial affairs before final

---

v. Miller, 572 S.W.2d 665, 669 (Tex. 1978) (holding that, absent consent, a husband could not enter into a settlement binding upon his wife regarding her claim for loss of consortium because the claim constituted her separate property). We therefore conclude that, under Texas law, Mr. and Mrs. Hinsley were not in privity regarding the adjudication of Mrs. Hinsley's rights in the property purportedly conveyed to her by the Partition Agreements. See Fidelity Lumber Co. v. Howell, 206 S.W. 947, 950 (Tex. Civ. App.--Beaumont 1918) ("There is no legal privity between the husband and wife in such sense that a judgment for or against the one will conclude the other, where the action concerns their separate property rights or interests not derived from each other." (internal quotation marks omitted)), aff'd, 228 S.W. 181 (Tex. Com'n App. 1921, judgm't adopted).

judgment." 18 WRIGHT ET AL., supra § 4478, at 788. Rather, principles of res judicata apply. See Arizona v. California, 460 U.S. 605, 618-19 (1983) ("[L]aw of the case doctrine was understandably crafted with the course of ordinary litigation in mind. Such litigation proceeds through preliminary stages, generally matures at trial, and produces a judgment, to which, after appeal, the binding finality of res judicata and collateral estoppel will attach."). As we have already observed, because Mr. Hinsley was not in privity with Mrs. Hinsley with respect to the FDIC action, fundamental principles of due process dictate that the Pre-Petition Turnover Order is not res judicata as to Mrs. Hinsley.

### 2. The Bankruptcy Turnover Order

The Trustee contends that, even if the Pre-Petition Turnover Order did not constitute an adjudication of Mrs. Hinsley's rights in the property purportedly conveyed to her by the Partition Agreements, the Bankruptcy Turnover Order nonetheless constituted such an adjudication. He contends that, because Mrs. Hinsley was served with a copy of the Trustee's Motion for Turnover of Assets in the bankruptcy case and failed to request a hearing on the issue, she is bound by the Bankruptcy Turnover Order. We cannot agree.

As an initial matter, Mrs. Hinsley correctly observes that the Bankruptcy Turnover Order does not purport to order her to do

26

anything.  To the contrary, it merely orders Mr. Hinsley to turn over certain property to the Trustee.[10]  Moreover, even if the Bankruptcy Turnover Order could be construed as ordering a turnover of property by Mrs. Hinsley, the order is invalid in this regard.  Section 542 of Title 11 of the United States Code provides for turnover of property of the bankruptcy estate to the bankruptcy trustee.  See 11 U.S.C. § 542.  Rule 7001 of the Bankruptcy Rules provides that an action by the Trustee against a third party for turnover relief pursuant to § 542 constitutes an adversary proceeding.  See FED. R. BANKR. P. 7001(1) (providing that a proceeding "to recover money or property, except a proceeding to compel the debtor to deliver property to the trustee" constitutes an adversary proceeding); Haber Oil Co. v. Swinehart (In re Haber Oil Co.), 12 F.3d 426, 437 (5th Cir. 1994) ("[A] proceeding to recover money or property is an adversary proceeding . . . ." (internal quotation marks omitted)).  "Adversary proceedings are governed by Part VII of the Bankruptcy Rules, Bankruptcy Rule 7001, and the rules in Part VII generally 'either incorporate or are adaptations of most of the Federal Rules of Civil Procedure.'"  Id. (quoting FED. R. BANKR. P. 7001 advisory committee's note).  As such, a request for turnover

_____

[10]  Indeed, the district court observed that Mr. Hinsley had fully complied with the Bankruptcy Turnover Order by executing quitclaim deeds to the real property described in the Pre-Petition Turnover Order and by representing that he did not have possession of or control over the other property described in the Pre-Petition Turnover Order.

27

relief against someone other than the debtor must be commenced by complaint rather than by motion. See FED. R. BANKR. P. 7003 (providing that an adversary proceeding "is commenced by filing a complaint with the court"); In re Perkins, 902 F.2d 1254, 1258 (7th Cir. 1990) ("A turnover proceeding commenced by motion rather than by complaint will be dismissed, and a turnover order entered in an action commenced by motion will be vacated." (citations omitted)); Smith v. Wheeler Tech., Inc. (In re Wheeler Tech., Inc.), 139 B.R. 235, 240 (B.A.P. 9th Cir. 1992) ("A turnover action is an adversary proceeding which must be commenced by a properly filed and served complaint." (internal quotation marks omitted)); Mayex II Corp. v. Du-An Prods., Inc. (In re Mayex II Corp.), 178 B.R. 464, 467 (Bankr. W.D. Mo. 1995) (dismissing a motion for turnover relief on the ground that an action for turnover relief must be commenced by a properly filed and served complaint); In re Taronji, 174 B.R. 964, 966 (Bankr. N.D. Ill. 1994) ("Ordinarily, a trustee must bring a separate adversary proceeding in order to recover disputed property of the estate, but when the property is held by the debtor, the trustee may proceed by motion."); In re Realty Southwest Assocs., 140 B.R. 360, 365 n.2 (Bankr. S.D.N.Y. 1992) ("Pursuant to 11 U.S.C. § 542, 'turnover' involves an action by the debtor or trustee to recover money or property to the estate. Such an action must be accomplished by adversary proceeding."). Here, the district court entered the Bankruptcy Turnover Order pursuant to a motion

28

seeking turnover relief.  Because the Trustee may only seek turnover relief from Mrs. Hinsley via a properly filed and served complaint in an adversary proceeding, the Bankruptcy Turnover Order is in no way binding upon her.  Cf. Hill v. Jeffery (In re Jeffery), 2 B.R. 197, 199 (Bankr. S.D. Tex. 1980) (holding that the bankruptcy court lacked jurisdiction to adjudicate the interest of the debtor's spouse in community property in a turnover proceeding because the trustee elected not to join the debtor's spouse as a party to the proceeding).  The fact that Mrs. Hinsley had notice that the Trustee was seeking turnover of assets that she claimed as her separate property provides no basis for concluding that the Bankruptcy Turnover Order is binding upon her.  See Martin, 490 U.S. at 765 ("Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree.").

In addition to concluding that the Pre-Petition Turnover Order and the Bankruptcy Turnover Order have no preclusive effect with respect to Mrs. Hinsley that would render the district court's entry of summary judgment sua sponte and without notice harmless error, we also conclude that the record before us does not otherwise conclusively demonstrate the absence of a genuine issue of material fact regarding the validity of the Partition Agreements entitling the Trustee to judgment as a matter of law.

29

Demonstration of this conclusion requires an identification of what facts are material to the validity of the Partition Agreements, which in turn requires a summary of relevant Texas law.

### 3. Texas Law of Community Property and Fraudulent Conveyances

Under Texas law, the availability of a particular piece of property to satisfy a judgment against a spouse depends upon whether the property constitutes one spouse's separate property; community property subject to joint management, control, or disposition by both spouses; or community property subject to one spouse's sole management, control, or disposition. Section 3.202 of the Texas Family Code describes the liabilities to which each type of property is subject as follows:

> (a) A spouse's separate property is not subject to liabilities of the other spouse unless both spouses are liable by other rules of law.
> (b) Unless both spouses are personally liable as provided by this subchapter, the community property subject to a spouse's sole management, control, and disposition is not subject to:
> (1) any liabilities that the other spouse incurred before marriage; or
> (2) any nontortious liabilities that the other spouse incurs during marriage.
> (c) The community property subject to a spouse's sole or joint management, control, and disposition is subject to the liabilities incurred by the spouse before or during marriage.
> (d) All community property is subject to tortious liability of either spouse incurred during marriage.

TEX. FAM. CODE ANN. § 3.202 (Vernon Pamphlet 1998).

30

Section 4.102 of the Family Code expressly authorizes the conversion of community property to separate property via partition agreement between the spouses:

> At any time, the spouses may partition or exchange between themselves any part of their community property, then existing or to be acquired, as the spouses may desire.  Property or a property interest transferred to a spouse by a partition or exchange agreement becomes that spouse's separate property.

Id. § 4.102.[11]  However, the Family Code and the Business and Commerce Code place limits on such partitions in order to protect creditors.  In his complaint, the Trustee sought to take advantage of these limits through a cause of action pursuant to

_____

[11]  The Family Code provides that "[p]roperty possessed by either spouse during or on dissolution of marriage is presumed to be community property," and "[t]he degree of proof necessary to establish that property is separate property is clear and convincing evidence."  TEX. FAM. CODE ANN. § 3.003 (Vernon Pamphlet 1998).  The community property presumption may be rebutted and a presumption of separate property created

> when (1) one spouse is grantor and the other spouse is grantee, or (2) one spouse furnishes separate property consideration and title is taken in the name of the other spouse, or (3) the instrument of conveyance contains a "significant recital" that states that the consideration is paid from the separate funds of a spouse or that the property is conveyed to a spouse as his or her separate property.

Pemelton v. Pemelton, 809 S.W.2d 642, 646 (Tex. App.--Corpus Christi 1991), rev'd on other grounds, Heggen v. Pemelton, 836 S.W.2d 145 (Tex. 1992); see also Dalton v. Pruett, 483 S.W.2d 926, 929 (Tex. Civ. App.--Texarkana 1972, no writ) ("When there has been a conveyance of property from the husband to the wife and a delivery of the deed, the presumption exists that it was his intention to make the property the separate property of his wife either by gift or by purchase; and, in the absence of fraud, accident or mistake, such conveyance cannot be disturbed.").

31

11 U.S.C. § 544(b), which allows a bankruptcy trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim."  11 U.S.C. § 544(b).

A review of the relevant Texas statutory provisions indicates that, while the Trustee may be entitled to the relief he seeks under them (perhaps even in a summary disposition upon the district court's providing Mrs. Hinsley with proper notice and an opportunity to be heard), the district court's sua sponte entry of summary judgment on these claims against Mrs. Hinsley without notice was not harmless error.

Chapter 24 of the Texas Business and Commerce Code establishes a cause of action whereby creditors may avoid fraudulent transfers by debtors.  Sections 24.005 and 24.006 define certain types of conveyances as fraudulent.

The version of § 24.005 applicable to the Partition Agreements provides in relevant part as follows:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose within a reasonable time before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>     (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>     (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>         (A) was engaged or was about to engage in a business or a transaction for which the remaining

32

assets of the debtor were unreasonably small in relation to the business or transaction; or
　　　　(B) intended to incur, or believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

TEX. BUS. & COM. CODE ANN. § 24.005 (Vernon 1987).[12]  Subsection (b) of the statute provides a nonexclusive list of "badges" of fraud that may create an inference of fraudulent intent on the part of the transferee, including the following:

> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Id. § 24.005(b).  Section 24.008 provides creditors injured by a transaction defined as fraudulent by § 24.005 with a number of

---

[12]  Section 24.005 was amended in 1993, see TEX. BUS. & COM. CODE ANN. § 24.005 (Vernon Supp. 1998), but the amended version of the statute is inapplicable to the Partition Agreements because they occurred prior to the effective date of the amended version of the statute, see BMG Music v. Martinez, 74 F.3d 87, 89 n.8 (5th Cir. 1996).

potential remedies, including "avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim." Id. § 24.008(a)(1) (Vernon 1987).

The plaintiff creditor bears the burden of proving the existence of fraudulent intent on the part of the grantor in order to demonstrate the fraudulence of a transfer under § 24.005. See Mancuso v. T. Ishida USA, Inc. (In re Sullivan), 161 B.R. 776, 781 (Bankr. N.D. Tex. 1993); Grand Prairie Indep. Sch. Dist. v. Southern Parts Imports, Inc., 803 S.W.2d 762, 765-66 (Tex. App.--Dallas 1991) (construing the predecessor of § 24.005, which contained language similar to § 24.005(a)(1)), aff'd in part and rev'd in part on other grounds, 813 S.W.2d 499 (Tex. 1991).[13]

The existence of fraudulent intent for purposes of § 24.005 is typically a question of fact. See Connell v. Connell, 889 S.W.2d 534, 542 (Tex. App.--San Antonio 1994, writ denied). While it is true that fraudulent intent for purposes of § 24.005

---

[13] We note that, while subsection (a)(2) appears to create an independent ground for deeming a transfer fraudulent without a specific intent element, we have construed this subsection as merely "providing that the debtor's failure to receive consideration for the transfer of property is one indicator of a fraudulent conveyance." BMG Music, 74 F.3d at 90 n.11; see also Klutts v. United States (In re Klutts), 216 B.R. 558, 561 (Bankr. W.D. Tex. 1997) ("Even though the Texas statute provides two alternative grounds for inferring a fraudulent transfer, none of the cases the Court has researched, including the Texas cases, have treated inadequate consideration as a separate grounds for inferring fraudulent transfer. They have considered inadequate or no consideration as merely one element in proving fraudulent intent, i.e. an 'indicia of fraud'").

may be established as a matter of law, as when a defendant does not dispute the existence of numerous badges of fraud and offers nothing more than "conclusory, self-serving statements" denying the existence of a fraudulent motive, see BMG Music v. Martinez, 74 F.3d 87, 90-91 (5th Cir. 1996), the Trustee has not set forth competent summary judgment evidence demonstrating that this is such a case.  Indeed, because the Trustee has not moved for summary judgment, he has had no occasion to set forth any summary judgment evidence at all.  We therefore conclude that the district court's sua sponte grant of summary judgment in favor of the Trustee without notice to Mrs. Hinsley is not sustainable as harmless error on the basis of § 24.005.  Cf. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (emphasis added)).

Section 24.006 of the Business and Commerce Code defines another class of transfers as fraudulent.  The section provides as follows:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or

35

the debtor became insolvent as a result of the transfer
or obligation.
   (b) A transfer made by a debtor is fraudulent as to a
creditor whose claim arose before the transfer was made
if the transfer was made to an insider for an
antecedent debt, the debtor was insolvent at that time,
and the insider had reasonable cause to believe that
the debtor was insolvent.

Id. § 24.006 (Vernon 1987).  Section 24.008 renders transfers

defined as fraudulent by § 24.006 actionable to the same extent

as those defined as fraudulent by § 24.005.  See id. § 24.008

(Vernon 1987).

   We have recently construed § 24.006(a) to "require[] the

claimant to prove that the transferor was (1) insolvent at the

time of the transfer and (2) received less than fair value for

the consideration it paid."  Askanase v. Fatjo, 130 F.3d 657, 673

(5th Cir. 1997).  While we have found no case law expressly

addressing the appropriate placement of the burden of proof

regarding the transferor's insolvency under § 24.006(b), we see

no reason why it should not be placed upon the claimant, as with

§ 24.006(a).

   As with his claim under § 24.005, the Trustee has not

presented any summary judgment evidence establishing that Mr.

Hinsley was insolvent at the time of or as a result of the

Partition Agreements or that Mr. Hinsley did not receive adequate

consideration for the property that he transferred to Mrs.

Hinsley through the Partition Agreements.  Thus, at this stage,

the Trustee could not have carried his burden of establishing as

36

a matter of law that the transfers effected by the Partition Agreements were fraudulent under § 24.006.  We therefore conclude that the district court's sua sponte entry of summary judgment in favor of the Trustee without notice to Mrs. Hinsley is not sustainable as harmless error on the basis of § 24.006.

Section 4.106 of the Family Code provides that "[a] provision of a partition or exchange agreement made under this subchapter is void with respect to the rights of a preexisting creditor whose rights are intended to be defrauded by it."  TEX. FAM. CODE ANN. § 4.106 (Vernon Pamphlet 1998).  No court has construed the placement of evidentiary burdens under this statute.  However, we find the cases placing the burden of proving fraudulent intent under § 24.005 of the Business and Commerce Code on the plaintiff creditor instructive as to the proper placement of the burden of proving fraudulent intent under § 4.106 of the Family Code.  Nothing in the language of § 4.106 would indicate that the burden of proof regarding fraudulent intent should rest on a different party under § 4.106 than under § 24.005.

As with his claims under §§ 24.005 and 24.006, the Trustee has set forth no summary judgment evidence establishing as a matter of law that the Partition Agreements were intended to defraud any creditors.  We therefore conclude that the district court's sua sponte entry of summary judgment in favor of the Trustee without notice to Mrs. Hinsley is not sustainable as

37

harmless error on the basis of § 4.106.[14]

In sum, the Transfers Order amounted to a sua sponte grant of summary judgment that was erroneous because of the lack of notice to the Hinsleys. As to Mr. Hinsley, the error was harmless because the res judicata effect of the Pre-Petition and Bankruptcy Turnover Orders preclude him from establishing a genuine issue as to any fact material to the Trustee's entitlement to avoid the transfers effected by the Partition Agreements. However, as to Mrs. Hinsley, the error was not harmless because the Trustee presented no summary judgment evidence that could meet his evidentiary burden under the statutes whereby he sought to avoid the transfers, much less establish his entitlement to avoid the transfers as a matter of law. We recognize that this constitutes a somewhat awkward result because, as to Mr. Hinsley, the Partition Agreements have been adjudicated invalid, but as to Mrs. Hinsley, at least at this stage of the litigation, they have not. However, this is

---

[14] As we have previously concluded, the Pre-Petition Turnover Order has no preclusive effect as to Mrs. Hinsley. However, it is worth noting that it is unclear from the language of the Pre-Petition Turnover Order whether the district court even predicated its holding that the Partition Agreements were void on a conclusion that the agreements were fraudulent. The order merely states that "the community debt obligations transcend any attempt to shelter or protect previously acknowledged community property." The district court made no findings of fact regarding any of the elements of a cause of action based on § 24.005 or § 24.006 of the Business and Commerce Code or § 4.106 of the Family Code.

the result that due process mandates.[15]  See Blonder-Tonque Lab., Inc. v. University of Ill. Found., 402 U.S. 313, 329 (1971) ("Some litigants--those who never appeared in a prior action--may not be collaterally estopped without litigating the issue.  They have never had a chance to present their evidence and arguments on the claim.  Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position.").

### B.  The All Writs Order and Judgment

Mrs. Hinsley challenges the All Writs Order and Judgment on the ground that the district court lacked the power, either under Rule 70 of the Federal Rules of Civil Procedure or the All Writs Act, to order the attachment of the property purportedly conveyed to her by the Partition Agreements.  Given our conclusion that the Pre-Petition Turnover Order, the Bankruptcy Turnover Order, and the Transfers Order all lack any binding effect on Mrs. Hinsley, we agree.

Pursuant to the All Writs Act, "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions

---

[15]  Mrs. Hinsley also contends that the Trustee's attempt to avoid the transfers effected by the Partition Agreements is barred by limitations.  Mrs. Hinsley has neither moved for summary judgment nor had judgment as a matter of law entered in her favor.  We decline to consider Mrs. Hinsley's potential entitlement to judgment as a matter of law in the absence of a previous resolution of the issue by the district court.

and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The authority conferred by the All Writs Act "'is firmly circumscribed, its scope depending on the nature of the case before the court and the legitimacy of the ends sought to be achieved through the exercise of the power.'" <u>Williams v. McKeithen</u>, 939 F.2d 1100, 1104 (5th Cir. 1991) (quoting <u>ITT Community Dev. Corp. v. Barton</u>, 569 F.2d 1351, 1358-59 (5th Cir. 1978)). "The authority of the All Writs Act cannot support an order . . . that is not directed at conduct which, left unchecked, would have had the practical effect of diminishing the court's power to bring the litigation to a natural conclusion." <u>Id.</u> (internal quotation marks omitted). In this case, Mrs. Hinsley's continued possession of the property purportedly conveyed to her through the Partition Agreements in no way diminishes the district court's ability to bring this litigation to a natural conclusion. As discussed <u>supra</u>, the Trustee's entitlement to turnover of this property may be properly determined via the adversary proceeding initiated by the Trustee's complaint seeking avoidance of transfers.

Rule 70 of the Federal Rules of Civil Procedure provides in relevant part as follows:

> If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party.

40

FED. R. CIV. P. 70. Rule 70 vests the district court with "power to deal with parties who seek to thwart judgments by refusals to comply with orders to perform specific acts." 12 WRIGHT ET AL., supra, § 3021. Its applicability, of course, presupposes the validity of the orders with which compliance is sought. See Gary W. v. Louisiana, 622 F.2d 804, 806 (5th Cir.1980) ("'[W]here a [party] expresses its unwillingness to comply with a valid judgment of a federal district court, the court may use any of the weapons generally at its disposal to ensure compliance.'" (quoting Gates v. Collier, 616 F.2d 1268, 1271 (5th Cir. 1980)) (emphasis added)). Because no order entered by the district court has created an obligation for Mrs. Hinsley to turn over property, Rule 70 cannot be used to accomplish this end. We therefore conclude that the All Writs Judgment and Order must be vacated.[16]

## C. The Discharge Order

Mr. Hinsley claims that the district court erred in entering the Discharge Order denying his discharge in bankruptcy without notice or a hearing. As the Trustee concedes, a proceeding to object to a debtor's discharge in bankruptcy is an adversary

---

[16] Mrs. Hinsley also contends that the All Writs Order and Judgment is invalid on the ground that it authorized the seizure of property that she claims is her homestead. As with her limitations defense, we express no opinion as to the legal or factual viability of her homestead claim, as this is an issue that the district court should properly address in the first instance in connection with the adversary proceeding initiated by the Trustee's complaint to avoid transfers.

proceeding. See FED. R. BANKR. P. 7001(4) (defining adversary proceedings to include a proceeding "to object to or revoke a discharge"). The Trustee utilized the proper procedural vehicle for lodging his objection to Mr. Hinsley's discharge by filing a complaint stating the bases for the objection. See FED R. BANKR. P. 7003, 4004(d). However, as with the Trustee's complaint seeking the avoidance of transfers, Mr. Hinsley answered, and neither the Trustee nor Mr. Hinsley filed any dispositive motions. As such, the district court's Discharge Order amounts to a sua sponte entry of summary judgment without notice. As discussed in relation to the Transfers Order, the district court's sua sponte entry of summary judgment without notice to the party against whom it is granted constitutes error. See Millar v. Houghton, 115 F.3d 348, 350 (5th Cir. 1997).

Furthermore, the order is devoid of any explanation of the basis for the district court's decision to summarily deny Mr. Hinsley's discharge. As we have observed on numerous occasions, "[a]lthough nothing in F. R. Civ. P. 56, governing summary judgment, technically requires a statement of reasons by a trial judge for granting a motion for summary judgment, we have many times emphasized the importance of a detailed discussion by the trial judge." Heller v. Namer, 666 F.2d 905, 911 (5th Cir. 1982); see also Myers v. Gulf Oil Corp., 731 F.2d 281, 283 (5th Cir. 1984). "In all but the simplest case, such a statement [is] not only helpful, but essential." Jot-Em-Down Store (JEDS) Inc.

42

v. Cotter & Co., 651 F.2d 245, 247 (5th Cir. Unit A July 1981).

"When we have no notion of the basis for a district court's decision, because its reasoning is vague or was simply left unsaid, there is little opportunity for effective review." Myers, 731 F.2d at 283-84; see also White v. Texas Am. Bank/Galleria, N.A., 958 F.2d 80, 82 (5th Cir. 1992) ("Although we review grants of summary judgment de novo, we remain a court of error. Without adequate findings of fact and conclusions of law, we are severely hampered if not completely obstructed in our review."); Williamson v. Tucker, 645 F.2d 404, 410-11 (5th Cir. May 1981) ("[A]n explanation of the basis of the district court's decision can be invaluable even in cases where Rule 52(a) clearly does not require findings of fact.").

In his complaint, the Trustee claimed that denial of Mr. Hinsley's discharge was warranted under subsections (a)(2), (4), (5), (6) and (7) of 11 U.S.C. § 727, which provides in relevant part as follows:

> (a) The court shall grant the debtor a discharge, unless--
> . . .
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
> (A) property of the debtor, within one year before the date of the filing of the petition; or
> (B) property of the estate, after the date of the filing of the petition;
> . . .
> (4) the debtor knowingly and fraudulently, in or in

43

connection with the case--
    (A) made a false oath or account;
    (B) presented or used a false claim;
    (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
    (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;
(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;
(6) the debtor has refused, in the case--
    (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;
    (B) on the ground of privilege against self-incrimination, to respond to a material question approved by the court or to testify, after the debtor has been granted immunity with respect to the matter concerning which such privilege was invoked; or
    (C) on a ground other than the properly invoked privilege against self-incrimination, to respond to a material question approved by the court or to testify . . . .
(7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider . . . .

11 U.S.C. § 727. On appeal, the Trustee merely reiterates many of the same bases for the denial of Mr. Hinsley's discharge contained in his complaint, including (1) Mr. Hinsley's alleged expenditure of funds of the bankruptcy estate to construct a large home where he and Mrs. Hinsley now reside, (2) Mr. Hinsley's violation of the Bankruptcy Turnover Order, and (3) Mr.

44

Hinsley's violation of the Pre-Petition Turnover Order.  Yet the Trustee "has as little inkling of the reasons for the [Discharge Order] as have we."  Myers, 731 F.2d at 283.[17]

Additionally, the party objecting to the debtor's discharge based upon each of the subsections upon which the Trustee relies in his complaint bears the burden of proving the existence of the condition rendering discharge improper.  See FED. R. BANKR. P. 4005 ("At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection."); Beaubouef v. Beaubouef (In re Beaubouef), 966 F.2d 174, 178 (5th Cir. 1992) (holding that a party objecting to a debtor's discharge pursuant to § 727(a)(4)(A) bears the burden of proving that the debtor made a statement under oath, that the statement was false, that the debtor knew the statement was false, that the debtor made the statement with fraudulent intent, and that the statement related

_____

[17]  We have been severely hampered in our appellate review of all aspects of this case because the district court made no findings of fact or conclusions of law in connection with any of the orders at issue.  The lack of findings of fact and conclusions of law is rendered even more problematic by the fact that this is a consolidated case.  As justification for many of the orders that it has entered, the district court appears to have relied upon prior determinations in other proceedings within the consolidated case.  In evaluating the Hinsleys' claims, we have been forced to parse through incomplete records of a number of different proceedings in order to determine whether the district court may have based an order relevant to a particular proceeding within the consolidated case upon testimony or other action taken in a different proceeding prior to consolidation. If the district court intends to rely upon actions taken in other proceedings as a basis for future orders, then it should make careful reference to the matter upon which it relies so as to facilitate effective appellate review.

45

materially to the bankruptcy case); <u>Pavy v. Chastant (In re Chastant)</u>, 873 F.2d 89, 90-91 (5th Cir. 1989) (holding that a bankruptcy trustee objecting to the debtor's discharge pursuant to § 727(a)(2)(A) bears the burden of proving that the debtor transferred property "with the intent to hinder, delay, or defraud [creditors]"); 6 COLLIER ON BANKRUPTCY ¶ 727.04[1][a], at 727-36 (Lawrence P. King ed., 15th ed. rev. 1998) ("Under Federal Rule of Bankruptcy Procedure 4005, the plaintiff has the burden of proof on the elements necessary to sustain the charge of false oath [pursuant to § 727(a)(4)(A)]." (footnote omitted)); 6 <u>id.</u> ¶ 727.08, at 727-44 ("Section 727(a)(5) must be read in conjunction with Federal Rule of Bankruptcy Procedure 4005, which imposes on the plaintiff the burden of 'proving the objection.' The initial burden of going forward with evidence is on the objector, who must introduce more than merely an allegation that the debtor has failed to explain losses.  Once the objector has introduced some evidence of the disappearance of substantial assets or of unusual transactions, the debtor must satisfactorily explain what happened." (footnote omitted)); 6 <u>id.</u> ¶ 727.09[1], at 727-46 ("The original burden of going forward, as well as the ultimate burden of proof under section 727(a)(6)(A), is on the objecting creditor to show that there has been a violation of a lawful order of the court.").[18]  While the Trustee adduced

---

[18]  As noted earlier, the Trustee also objected to Mr. Hinsley's discharge on the basis of § 727(a)(7).  The Trustee

46

evidence at various hearings before the district court, including Mr. Hinsley's contempt hearing, that might be sufficient to carry the Trustee's burden of proving conduct that bars Mr. Hinsley's discharge, the Trustee has not demonstrated how he has established such conduct as a matter of law.

Moreover, it does not appear that all of the bases upon which the Trustee objected to Mr. Hinsley's discharge are viable bases for the district court's denial of the discharge. Specifically, the Trustee points to the fact that the district court held Mr. Hinsley in civil contempt for violation of the Bankruptcy Turnover Order. However, from our review of the record, it appears that the only action that the district court required Mr. Hinsley to take in order to purge himself of contempt was the execution of quitclaim deeds to certain real property that conveyed any interest in the property that he may have had to the Trustee. Yet, any interest that Mr. Hinsley may have had in these properties vested in the Trustee by operation

_____

apparently predicated this objection on the assumption that Mr. Hinsley's Chapter 11 bankruptcy case constituted "another bankruptcy case" within the meaning of § 727(a)(7). Even accepting this dubious assumption and the concomitant conclusion that the Trustee may be able to establish that a discharge is improper under § 727(a)(7), it is clear that the Trustee also bears the burden of proof under this subsection because it merely provides for denial of a discharge based on conduct described in other subsections of § 727 "in connection with another [bankruptcy] case . . . concerning an insider." See 11 U.S.C. § 727(a)(7). As indicated, supra, the objecting party bears the burden of proof under these other subsections, and we see no reason why this would be any different under § 727(a)(7). See FED. R. BANKR. P. 4005.

47

of law upon Mr. Hinsley's filing for bankruptcy.  See 11 U.S.C. § 541; In re Swift, 129 F.3d 792, 795 (5th Cir. 1997) ("Upon the filing of bankruptcy, Sec. 541 of the Bankruptcy Code creates an estate that consists of all legal or equitable interests of the debtor in property as of the commencement of the case." (internal quotation marks omitted)); Louisiana World Exposition v. Federal Ins. Co., 858 F.2d 233, 245 (5th Cir. 1988) ("The filing of a petition for reorganization under Chapter 11 of the Code creates an estate.").  If the district court concluded that Mr. Hinsley had come into compliance with the Bankruptcy Turnover Order merely by executing a series of quitclaim deeds, it in essence indicated that Mr. Hinsley had never violated the order in the first place because he came into compliance with the order by engaging in a series of formalities to undertake a conveyance that had already occurred by operation of law.

Because the district court has provided no explanation as to why it denied Mr. Hinsley's discharge and because the Trustee has not demonstrated the absence of a genuine issue of material fact regarding any of the bases for denying a discharge contained in his complaint, we vacate the Discharge Order and remand for further proceedings.  See Carter v. Stanton, 405 U.S. 669, 671-72 (1972) (vacating and remanding the district court's order granting summary judgment on the ground that it was "opaque and unilluminating as to either the relevant facts or the law with respect to the merits"); Myers, 731 F.2d at 284 & n.9.  We

48

express no opinion as to whether a viable basis exists for denying Mr. Hinsley's discharge, either summarily (upon compliance with applicable procedural requirements) or after a full trial on the merits. If the district court wishes to summarily dispose of the Trustee's complaint objecting to Mr. Hinsley's discharge, then it must provide Mr. Hinsley with the notice required by Rule 56 of the Federal Rules of Civil Procedure and provide him with an opportunity to respond.

## III. CONCLUSION

For the foregoing reasons, we VACATE the Transfers Order as to Mrs. Hinsley but AFFIRM it as to Mr. Hinsley, VACATE the All Writs Order and Judgment and the Discharge Order, and REMAND for further proceedings consistent with this opinion. Mr. Hinsley and the Trustee shall each bear his own costs, and the Trustee shall bear Mrs. Hinsley's costs.

49